UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 20-1596(DSD/DTS)

Tibebe F. Samuel,

       Plaintiff,

v.                                  **ORDER**

Oromia Media Network, Principal Officer
Taddele M. Kitaba, and Ayantu Bekecho

       Defendants.

   Tibebe F. Samuel, 6832 New Hampshire Avenue, Takoma Park, Maryland, 20912, plaintiff pro se.

   Caitlinrose H. Fisher, Esq. and Forsgren Fisher McCalmont DeMarea Tysver LLP, Capella Tower, 225 South 6th Street, Suite 1750, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendants Oromia Media Network (OMN) and Taddele Kitaba. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion to dismiss is granted.

## BACKGROUND

This dispute arises out of OMN's reporting on Ethiopia's Oromia region. The circumstances underlying this action involve the complex and fraught political situation in Ethiopia. The court will set forth only those facts that bear on the viability of plaintiff Tibebe Samuel's claims.

OMN is a Minneapolis-based media organization "established for educational [purposes] ... to broadcast citizen-based journalistic work related to Oromo and Ethiopian people." Am. Compl. at 4.  Kitaba is an officer of OMN.[1]  Id. at 1.

Samuel is a native Ethiopian and lawful permanent resident of the United States.  Id.  Samuel operates a traditional clothing business based in Addis Ababa, Ethiopia, as well as a retail shop in the United States.  Id. at 7.  He "imports Ethiopian traditional cloth for retail sales to his [American] shop ... and ... takes special orders from clients for ... handmade traditional clothes."  Id.

Samuel alleges that OMN "failed to exercise reasonable due care as any responsible broadcaster would" by communicating violence-inciting messages to its audience through various media outlets.  Id. at 10-11.  He contends that OMN's media coverage incited violent protests in Ethiopia which, in turn, thwarted his ability to distribute his goods and ultimately required him to close his business.  Id. at 7.

---

[1]  Samuel also named Ayantu Bekecho, a member of OMN, as a defendant, but she has not been served with the amended complaint and has not made an appearance in the case.

## I. The 2019 Protest

In October 2019,[2] violent protest erupted in Addis Ababa. Samuel alleges that OMN's media coverage caused this protest and, by extension, protest-related damage to his business. Specifically, Samuel contends that OMN conspired to bring international media attention to its then executive director, Jawar Mohammed,[3] by "falsely claim[ing] that the [Ethiopian] government was trying to assassinate [him] ..." Id. at 5. By doing so, Samuel alleges that OMN incited extremist viewers[4] to "engage[] in a massacre and property destruction in the Oromia Region and Addis Ababa" which prompted the Ethiopian government to "shut down the internet" and close roads in Addis Ababa and surrounding areas. Id. at 5, 7.

Because of the protest, Samuel asserts that "[h]e was forced to close his business fearing violence." Id. at 7. He further

---

[2] Though the harm Samuel alleges is based on events occurring in 2019 and 2020, he contends that OMN's role in facilitating violence in Ethiopia began in 2013 when its executive director stated: "We have now liberated the airwaves of Oromia. We will liberate the land [in] the coming years." Id. at 3 (alteration in original) (emphasis omitted).

[3] Samuel alleges that OMN "engaged in a political campaign under the banner of 'Jawar 2020'" by promoting "the Executive Director of their organization as someone who is willing and capable of challenging the Prime Minister of Ethiopia." Id. at 4-5.

[4] Samuel alleges that, through its broadcasting, OMN "established, guided, and controlled ... the most brutal and violent group in Ethiopia" known as the "Querros." Id. at 3.

alleges that the government-imposed internet shutdown and road closures prevented him from taking orders during the Thanksgiving and Christmas holiday season. Id. Samuel alleges that he "was unable to conduct his business and lost $100,000 in revenue during that period." Id.

## II. The 2020 Protest

Ethiopia was plagued with similar civil unrest in June 2020 following the assassination of Hachalu Hundessa, a popular Ethiopian singer. Id. at 5. Samuel alleges that OMN's media coverage of Hundessa's assassination cast blame on the Amharas, a Somali ethnic group, and directed extremist audience members to kill Amhara people. Id. at 5-6. He specifically asserts that OMN incited "the massacre of Amharas by using [the] slogan[s] 'Down, Down, Amharas' ... [and] '[D]own, Down, Neftengas[.]'"[5] Id. at 6. Samuel contends that such statements caused extremists to destroy approximately "2.5 million Ethiopian Birr worth of [his] properties" and severely injure his business partner/brother. Id. at 7.

## III. Ongoing Developments

Samuel claims that he is unable to resume business operations because OMN continues to "call[] for violence in Ethiopia and is

---

[5] Samuel asserts that "'Neftengas' ... [is] a derogatory term used to 'describe' the Amhara people." Id. at 5.

4

still giving directions [to viewers] on how to ... force business entities to close." Id. at 8.  Samuel also claims that OMN's media coverage perpetuates destabilization in Ethiopia by intentionally "creating ethnic conflict." Id. at 8.  According to Samuel, ethnic conflict "is a destabilizing factor" that renders him "unable to continue his business in Ethiopia." Id.

In his response to OMN's motion to dismiss, Samuel further alleges that OMN specifically instructed its audience to "[k]ill the Amharas" and "burn the Amhara's home" as well as to "put nails in the middle of the highway" and "intimidate merchants to close their business[es][.]"  ECF No. 61, at 2.  However, the court will not consider these allegations, as Samuel did not allege them in his amended complaint, as required.

**IV.  This Lawsuit**

On July 13, 2020, Samuel commenced this action and filed a motion for preliminary injunction seeking to enjoin OMN from continuing its allegedly incendiary media coverage.  OMN thereafter moved to dismiss the complaint.  In response, Samuel moved to amend his complaint without objection from OMN.  On July 12, 2021, Samuel filed an amended complaint alleging negligence under Minnesota common law and negligence per se based on violations of 18 U.S.C. §§ 956, 878 and 26 U.S.C. § 501(c).  OMN

5

now moves to dismiss the amended complaint for failure to state a claim.[6]

## DISCUSSION

**I.   Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

---

[6]   Although the motion for preliminary injunction is still pending, it is not presently before the court.  Given the outcome of this motion, it will be denied as moot.

Although a pro se pleading is to be liberally construed, it still must allege some historical facts, which if proven true, would entitle the plaintiff to some specific legal remedy against the defendant, based on some established rule of law. See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law"). Samuel's amended complaint does not satisfy this requirement because it does not allege facts that, even if true, would entitle him to relief.

**II. Negligence**

Samuel alleges that OMN's speech constituted negligence. Under Minnesota law, negligence requires: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." DeLuna v. Mower Cty., 936 F.3d 711, 716 (8th Cir. 2019) (internal quotations omitted). Minnesota courts do not consider foreseeability in assessing proximate cause. Id. at 717. Rather, "Minnesota courts look to whether the injury 'follow[s] in an unbroken sequence, without an intervening efficient cause, from the original negligent act.'" Id. (alteration in original). An intervening cause does not negate a proximate cause finding "if the [original] act was a substantial factor in the harm's

7

occurrence." George v. Estate of Baker, 724 N.W.2d 1, 10 (Minn. 2006). However, "if the harm would have occurred even without the negligent act," a Minnesota court cannot find that the act was a substantial factor in causing the alleged harm. Id. at 11.

Samuel has failed to adequately allege any of the required elements of a negligence claim. As a threshold matter, Samuel does not plausibly allege that OMN's speech was the proximate cause of his injuries. Even assuming that OMN had "a duty to make sure all their message[s] do not incite violence" and that OMN breached this duty, Samuel fails to plausibly allege the requisite causal relationship between OMN's speech and his injuries. Considering the broader ongoing civil turmoil in Ethiopia, the alleged connection between OMN's news coverage and the protest-related damage Samuel alleges that his business sustained is simply too attenuated to establish causation.

Minnesota courts have explained that "not every contributing cause is considered the proximate cause of an injury." Lammle v. Gappa Oil Co., No. A09-2265, 2010 WL 3119474, at *3 (Minn. Ct. App. Aug. 10, 2010). To hold otherwise would "convert[] events both near and far, which merely set the stage for an accident, into a convoluted series of 'causes' of the accident." Harpster v. Hetherington, 512 N.W.2d 585, 586 (Minn. 1994). In the amended complaint, Samuel acknowledges that multiple factors, namely

8

Hachalu Hundessa's assassination and the 2020 election postponement, contributed to political instability throughout Ethiopia. Samuel does not, however, plausibly distinguish how OMN's speech, rather than extremists influenced by the broader political climate in Ethiopia, was a substantial factor in causing his injury.

Consequently, Samuel's negligence claim fails as a matter of law. Any doubt about this determination is overcome by the First Amendment's Free Speech Clause.

### III. First Amendment Preemption

OMN argues that the First Amendment preempts Samuel's state law negligence claim. Aside from a few narrow categorical exceptions, the First Amendment shields speech from tort liability. See Snyder v. Phelps, 562 U.S. 443, 443 (2011) ("The Free Speech Clause of the First Amendment can serve as a defense in state tort suits ...").

Specifically, speech on matters of public concern "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." Connick v. Myers, 461 U.S. 138, 145 (internal quotation marks omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community ..." Snyder, 562 U.S. at 453 (internal citations

9

and quotation marks omitted). The stringent protection afforded to speech on matters of public concern is paramount in the press media context. See Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels., 413 U.S. 376, 381-82 (1973); see New York Times Co. v. Sullivan, 376 U.S. 254, 269-77 (1964) (discussing the history of freedom of the press). Accordingly, speech on matters of public concern is generally protected from tort liability unless it fits within one of the "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." Chaplinsky v. State of New Hampshire, 315 U.S. 568, 571-72 (1942).

Samuel broadly asserts that the First Amendment does not preempt his claim because OMN's speech constituted incitement, a categorical exception to the First Amendment's Free Speech Clause.[7] OMN, however, contends that it has not "engag[ed] in speech that meets the First Amendment exception for inciting violence" and

---

[7] In his response to OMN's motion to dismiss, Samuel also asserts that OMN's speech constituted "fighting words," another categorical exception to the First Amendment. See ECF No. 61, at 3. Additionally, his response provides a more robust basis for his "incitement" argument under the test articulated in Brandenburg v. Ohio, 395 U.S. 444 (1969). Id. at 2-3, 11-13. However, as noted above, the court will not consider allegations not alleged in the amended complaint. Even if the court were to consider the new allegations, they are insufficient to support a finding that OMN's words caused the violence at issue.

that its speech warrants heightened protection as it constitutes news coverage on matters of public concern. ECF No. 57, at 13.

To establish that OMN's speech constituted incitement, Samuel must show that it was "directed to inciting or producing imminent lawless action and [was] likely to incite or produce such action." Brandenburg, 395 U.S. at 447. The term "imminent" connotes immediacy rather than "advocacy of illegal action at some indefinite future time." Hess v. Indiana, 414 U.S. 105, 108 (1973); see also N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 927 (1982). In sum, speech may not be "sanctioned as incitement to violence unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." Bible Believers v. Wayne Cty., Mich., 805 F.3d 228, 246 (6th Cir. 2015).

Samuel has failed to adequately allege any of the required elements of incitement. Even if the alleged OMN slogans "Down, Down, Amharas" and "[D]own, Down, Neftengas" could plausibly be construed as promoting violence, the amended complaint does not further analyze the speech under the Brandenburg test. Although Samuel cursorily characterizes OMN's speech as "incitement," he has failed to plausibly allege that OMN intended to cause violence

11

or that there was an imminent temporal connection between OMN's speech and the violent protests in Addis Abba. Am. Compl. at 6; see Bible Believers, 805 F.3d at 226. Samuel's conclusory characterization of OMN's speech does not suffice to overcome its First Amendment protection. Iqbal, 556 U.S. at 678 (holding that "labels and conclusions" are insufficient to state a claim).

For these reasons, the court must find that Samuel is barred from bringing a tort claim against OMN based on the allegations set forth in his amended complaint.

**IV. Negligence Per Se Claim**

Samuel also alleges negligence per se based on violations of 18 U.S.C. §§ 956, 878 and 26 U.S.C. § 501(c). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. University of Chicago, 441 U.S. 677, 688 (1979). Rather, the relevant inquiry is "whether Congress intended to create [a] private right of action ..." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). Where, as here, a statute seemingly provides no private cause of action, "the burden is on [the plaintiff] to demonstrate that Congress intended to make a private remedy available ..." Suter v. Artist M., 503 U.S. 347, 363 (1992) (citing Cort v. Ash, 422 U.S. 66 (1975)). This requires the plaintiff to analyze the text of the statute as well as its

legislative history to allege that it "explicitly or implicitly shows [Congress's] intent to create ... the cause of action." Furrer v. Brown, 62 F.3d 1092, 1095 (8th Cir. 1995). Because Samuel has not met this burden, nor attempted to, his negligence per se claim fails as a matter of law.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion to dismiss [ECF No. 55] is granted;

2. The motion for preliminary injunction [ECF No. 2] is denied as moot; and

3. The case is dismissed with prejudice

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 1, 2021

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court